Case number 18-1134 at L. Southwest Airlines Co. at L. Petitioners v. Federal Energy Regulatory Commission. Mr. Adducci for the petitioner, Mr. Fisk-Lawson for the respondent, and Mr. Caldwell for the intervention. Good morning and may it please the court. My name is Steve Adducci representing Petitioner Shippers in this matter. I'd like to reserve four minutes of my time for rebuttal. In the orders under review, the commission has unreasonably departed from established regulations, precedent, and policy, evaluated the complaints at issue under a new, unsupported and illogical standard, and has based its decision to dismiss the complaints on data it knew to be erroneous. FERC's decisions are arbitrary and capricious, not the result of reasoned decision making. All challenges to index increases are governed by one regulation, 18 CFR 343.2c, which provides in relevant part a protest or complaint filed against a rate proposed or established pursuant to indexing must allege reasonable grounds for asserting that the rate increase is so substantially in excess of the actual cost increase incurred by the carrier that the rate is unjust and unreasonable. Based on the plain language and as written, the regulation plainly focuses on the effect of the index increase. Under every challenge to an index increase, since the regulation ambiguous in the sense it says actual cost increase is incurred, it's clearly talking about past costs rather than future costs, but it's ambiguous on the question whether that means incurred at the time the index rate is increased or incurred by the time the complaint is filed. I would say that based on the commission's own precedent, and that every case that has challenged an index increase since the inception of that regulation, there has never been a case in which the commission has used the data in order to evaluate the index increase. So never before has the pipe has been changed. Robert Nussbaum There are two different parts of your argument. One is the unexplained change in position, but I guess I'm just probing right now whether the new interpretation is substantively unreasonable, and I'm not sure I see it where it just says costs incurred. It doesn't say as of when, as of what past time. Dr. Laird That regulation needs to be dealt with in the context of what the annual index rate change actually is designed to do. The annual index rate change is a very narrow and specific rate change methodology. It's designed specifically to allow a carrier to increase its rates for the specific costs, inflationary costs in the time period over the previous year. To include costs, post-index increase involves an irrelevant time period that has nothing to do with the costs the rate increase is designed to compensate for. Robert Nussbaum Well, but when you increase, when you do the index rate increase in price, it's valid for all time going forward. Once you do, once you perform the index increase, the pipeline will experience a number of revenue increases and cost increases and decreases. For any number of reasons, that may be unrelated to the index increase. In those situations. Dr. Laird Sure. And that could be true in one year, or it could be true over three years. Robert Nussbaum That's correct. But when that pipeline experiences those cost increases, the mechanism to address the cost increases or decreases is one of the other methodologies that the commission has set out. For instance, if on a post-index increase basis, the pipeline experienced higher costs, lower revenues, the result or the response should be the carrier should evaluate whether it needs to file a rate increase to adjust its rates. If on a post-index increase, basis, the carrier is reporting increasing over-recoveries, then a shipper is entitled to look and see whether it should file a complaint to reset that rate. Robert Nussbaum I mean, we're in this sort of odd intermediate process, right? The simple quick and dirty rule would be you can just increase up to the ceiling, and that adjusts for PPI. And if you want to look at anything else, go do a full-blown cost-of-service proceeding. I'm not sure I have the terminology right. Here, they say, we will create a limited further inquiry to account for situations where either the costs look like they're getting out of whack or the profit margins look like they're getting out of whack. But we won't let that expand into the full-blown cost-of-service proceeding, which the shipper can always provoke if it wants to, right? Correct. So all we're talking about is whether this intermediate quick look plus complaint can look to the change in cost-of-service. Or the change in profit margin, you know, from year T minus two to year zero in the past, or up to the point of the complaint. It just doesn't seem hugely different in kind, whether you cut off the inquiry at the time of the rate index or the time of the filing of the complaint. I believe it's a huge difference, Your Honor, because the fact of the matter is that the index was designed to recover particular costs. And once you start incorporating costs post-index, it would lead you to the logical and unreasonable results. For example, if 2012 costs are the foundation for a 2012 index, and the 2012 costs are also the foundation for a 2013 index, you have two increases based off of the same pot of costs. You immediately start to double recover the costs that you were intending or that were supposed to be recovered. There's no precedent for that. It's illogical and it's unreasonable. By limiting the index increase specifically to the costs that it was designed to recover, meaning the inflationary costs over the prior period, you get away from that. You don't run into those illogical and unreasonable situations. In fact, in a series of orders, the Commission has already identified that looking at post-index cost and revenue data to evaluate an index is fundamentally irrelevant. In a series of three orders dealing with SFPP's 2011 index rate increase, SFPP specifically asked that post-2011 cost and revenue data, the same exact type of cost and revenue data that we're talking about in our case, should be used to evaluate the index because they said it showed they were unable to recover their costs on a post-index basis. Therefore, on a pre-index basis, the index increase did not exceed costs. FERC looked at that and said, no, we're not going to go there. They found it completely irrelevant. In fact, they said, the only relevant evidence in indexing cases is the change in the pipeline's cost of service in the two years preceding the index increase. That later developed data is irrelevant. FERC went on to explain and found that even if the post-2011 index data was found to be accurate for everything that SFPP said it would be... That's an order denying motion to reopen the record. They specifically found that even if... At least plausibly distinguished as a protest case where all of that later data are post-complaint, post-protest filing. Well, I would say this, Your Honor, it's three orders. FERC reaffirmed them on every step of the way. And what I'm saying is that FERC actually said that if you accept the 2011 post-index data that SFPP was saying was accurate, even if you assume that it's accurate for everything that it said, it would not change anything and it would be not relevant to the evaluation of the index. The opinion number 527 reaffirmed that. And in reaffirming that, they explained that its precedent should be understood as reflecting the commission's policy that index rate proceedings are to be conducted on a streamlined basis without regard to the pipeline's subsequent financial data. And then in 527A, it reaffirmed the exclusion of that data. Now, with respect to... clarify your understanding, what exactly is the index intended to capture? So it's 2010 and you're going to apply an index rate increase based on measurement of costs from 2008 to 2009. Those two years are looked at. They're supposed to capture the inflation measure and you apply it to your 2010 rate. Is the theory that... I know you said it's retrospective. Is the theory that by doing so, the 2010 rate is catching up for any inflation costs that they were not able to get with the 2009 rate? Or is it to make sure the 2010 rate going forward is up to date with inflation? I'm just trying to understand what... It's the first statement, Your Honor. The index is designed to capture the inflationary costs change that occurred between 2008 and 2009. That wouldn't have been captured in the 2009 rate? Correct. So it's always... In all of the cases that FERC has dealt with, it's always retrospective. What is your best authority for them explaining that that is the inflation measure that the index is intended to capture? I would go back to the first example in the BP West proceeding where they established the substantially exacerbate test. They specifically point out in that case that in performing the analysis, you look, and I believe that one was a 2007 complaint dealing with a 2005 index increase, that you specifically look at the difference between 2003 and 2004 to evaluate that. And in that context, FERC specifically ignored any post-index data. And then if you were to change it and to allow the pipeline to include, at least for purposes of this substantial exacerbation test, cost changes that happened in 2010 up to the time of complaint filing? Would that then sort of result in double-counting? Because in 2011, you're going to get to use a new rate. You're going to have a new rate calculation, index calculation, to capture the 2010 inflation, which will be included in the 2011 rate. But they will have already incorporated that price change. Correct. That's exactly what I was trying to get at. Is it a double-counting problem? Is your theory, at least? Yes. That's exactly what I was trying to get at in the context of the 2012 costs are included for a 2012 index rate. It's also going to be included in the 2013. So you would have a double recovery of costs in that context once you start to include post-index cost and revenue data. Thank you. In these three commission decisions you cite, BP, West Coast, the three you rely on for the proposition that even where the commission had weight or data didn't use it, did I hear you say that in each of those cases, what I'm talking about is all these names are so similar. BP, West Coast product, June 06. Tesoro, November 07. BP, West Coast products, March 07. In all three of those cases, did you say that there was a motion to consider the later data and FERC did not? I was in the consideration of later data. I was talking about the SFPP decisions dealing with its 2011 index rate case. That was filed by SFPP. That was a protest proceeding. So the BP, West Coast and Tesoro cases you're talking about, those dealt with the establishment of the substantially exacerbate test. They're all complaint cases, right? Correct. And your point about those three cases is that the commission had the data but didn't use it. Correct. But the issue was never teed up in those cases. It was not directly teed up, Your Honor. It's a question lurking in the record. So to the extent you're challenging the adequacy of FERC's explanation and whether they adequately distinguished past precedents, those really aren't adverse precedents on the question before us right now. This is a question of first impression. FERC could have addressed this issue in those cases, but it didn't. I would, two responses to your question there. One, given the fact that FERC has never dealt with post-index increased cost and revenue data to evaluate an index increase since the beginning of the regulation, tells you that from that standpoint, FERC does not consider it material. Now, with respect to your other question dealing with the protest versus complaint, the protest, the 527 proceedings I would say are about 99.9% on point with the complaint. And that is because those are the protest cases. Right. It started, 527 started as a protest case, was set for hearing. The commission specifically found that the evidentiary scope in that proceeding was all evidence that was relevant. But a protest case, this issue won't arise in a protest case. It can't. But it just did, Your Honor. They specifically asked. But the later data in the protest case will be post-filing. And FERC has maintained the bright line rule that they won't consider new data that arises post-filing. They said they could review data because of a complaint includes a broader set of factors. And that's what I'd like to say is in 527, FERC specifically explained that while the commission has sought to limit the issues that can be considered at the preliminary screening stage, when the commission has limited time to analyze protests with statutory time frames, once the commission determines to set the matter for hearing, somewhat broader factors can be considered. From an evidentiary standpoint, these complaints right here are on all fours with the 527 case where they had the data and they said even if we accept it, even if we accept it and treat it as accurate, it's still going to be irrelevant to the evaluation of the index. It's as close as possible without being a complaint case because the evidentiary posture of both cases is identical. Your Honor, I'm running out of time. I would like to reserve some of my time if you have any other questions. Let's assume we agree with you about this. We don't then have to reach the income tax allowance issue, right? Yeah, the income tax allowance is a separate alternative argument. And it's also an independent argument for rejecting these orders. If we agree with you on this point, I'm not a peep about that, right? I would say that that would be your prerogative, Your Honor. Well, if we don't say anything, would it be open on remand or would it already be closed on remand? I would say it would still be open on remand and it would be determined on whether their inconsistency is reasonable or not. Thank you. Good morning, Your Honors. Anand Viswanathan on behalf of the Commission. There's been a few questions about this 2011-2012 set of orders, so I just want to quickly walk through that if I may. I think Judge Katsas, you pointed out correctly that while that set of orders did involve an attempt by SFPP to reopen the record, that set of orders involved protests that were filed immediately after the rate increases in question. The orders here distinguish that set of orders because here is a different situation where the data is available to the Commission at the start of the proceeding. And so the Commission pointed out that typically it does not allow parties to reopen or add new data to a record once a proceeding has started. And that's a fair, that seems like it's a, at least a plausible distinction. But all you did in your explanation was say, oh, there's this one other case, I think it's 2012, I think it's 2012 SFPP, and you said, well, that's a protest case and this is different. That does seem to understate the extent to which you're changing course and swimming upstream. Because it wasn't, it's not just that there's one protest case out there and complaints are different from protests. There were other complaint cases where admittedly without a lot of thought, you looked only to, you look backwards from the time of the rate increase and there are other statements in the original regulation and in the proposed new regulation that was cited. Just seems like that's how the Commission had always done things. And I think the Commission acknowledged that in the orders here. I don't think it was attempting to say, well, other orders were just about protests and this is a complaint that's different. I think what the Commission was trying to say was that in other orders, it has looked at the two years of data preceding the rate increase. But this is a new circumstance where we have additional data post-dating the rate increase because of the timing of the complaint. Was there any case ever where the Commission relied on post-rate increase data? Has that ever happened in either a protest or a complaint? I don't believe so. I think that's part of the reason the Commission said it was a new circumstance. I know that there's. I mean, I couldn't find one. And so there's a couple of orders that Your Honors talked about with my friend on the other side where there was a similar situation. I think this is the 07 set of orders where there was a number of complaints. And some of them were filed a couple of years after. There was after a rising data. There was the data available. But I think you pointed out, Judge Katz, in that set of orders, the question was never teed up. Nobody asked, Commission, can you actually look at not just the years before? When does that matter? It seems to me that this turns on what the Commission thinks the index is measuring and doing. And by all signs, it is using the two year, for two previous years, to determine an index rate to capture inflation losses, to keep the rate as accurate as possible given the consequences, the risk of inflation. So explain to me, well, if the Commission believes that the point of this is to sort of keep a running, we're not going to just stop those two years, but we're going to keep going past those two years and past the filing of the rate itself to evaluate the inflation risk and whether the change in the rate was commensurate with that inflation risk. That's a very different inquiry. So whether someone tees it up or not, if that's what the Commission thinks the index is doing, it has to do it. It can't just say, we're going to do it for you because they filed late and we have the data, but we're not going to do it for other people who filed just as late. We're not going to ask about the data. I mean, the index, the Commission tells us what the index is measuring and doing, and that's what seems to me to be the flat inconsistency here. But maybe they had a view of what the index is doing, and maybe the Commission has a different one. Yeah, and I think there's a distinction here between the purpose of indexing, which the Commission has defined sort of consistently and broadly for since the first order where it implemented the Energy Policy Act and this was affirmed, where the Commission has described indexing as it's simply to allow pipelines to adjust their rates to account for inflationary cost changes. But just to drill down on that, when you increase your rate in 2010 based on measurements that come from 2008 and 2009, is that increase meant to capture whatever loss you would have had from your locked-in rate that didn't adjust for inflation in 2009, or is the goal to do up until the last possible minute, get the 2010 rate as close as possible to all up-to-date inflation information? I think the goal is to make sure that future rates reflect costs that were incurred. I'm not sure what that means, the costs that were incurred. So if future rates are reflecting costs that were incurred, it sounds like it's reparative. It's catching up for whatever loss may have occurred, say, in 2009 due to inflation. Is that correct? Is that what you mean by catching up for loss? That's the way it's been applied in the past because of the fact that— A hundred percent of the time. Well, again, I think that here there's a difference between how the Commission has assessed complaints or protests challenging an index increase versus the sort of point of indexing, which has been stated broadly as recovering cost increases. It hasn't been defined so clearly as it's only supposed to be what happens before— I don't understand how the challenge to the index rate increase, what's considered there, can be divorced from what the point of the index rate increase is meant to accomplish. Well, because I think that the Commission has sort of defined how it— how it's supposed to prevail on a complaint in the regulations, 343 and 2C1, and the regulation has been stated broadly, and that refers to actual costs incurred by the pipeline. There's no dispute here that all of the data, including the post-rate increase data the Commission considered, is actual costs incurred by the pipeline. Now, in practice— Wait, but once you start using data that goes beyond that two-year period, which is what happened here, then you're no longer just capturing the inflation that's measured by those two years. You're making it a three-year or two-and-a-half years, depending on the time of the filing. Two-and-a-half to three-year measure of inflation, are you not? Isn't that what they did in this case? I think that the— That's what they did in this case by expanding the window in which we're going to look at costs, correct? Well, it expanded the window, but I think, again, there's a difference between how the pipeline gets to collect an index adjustment each year, which always looks backward at what happened and uses the index published by the pipeline, which reflects industry-wide cost changes in the past, versus what a complaining party has to prove to show that the rate increase is substantially next to the actual cost. Shouldn't those be the same questions? Because what they're doing is they're not challenging the rate in 2011. They're saying in 2010, that's the final agency action, your implicit approval for the whole indexing thing. The final agency action being challenged here is the rate that went into effect in 2010, and that is what is alleged to be substantially excessive. Excuse me. Apologies. But the change in the question in the middle of the proceeding, when you start expanding the data that comes in, then you're starting to say, well, was it substantially excessive at the time the complaint was filed? Isn't that a different question? Well, I think the commission was trying to articulate a way forward in a new circumstance. I think it defined this as a narrow— There's nothing new. You've had prior cases where complaints were filed a year, a year and a half after. If you thought the point of this index proceeding was to allow the sort of moving target analysis of whether it was commensurate with cost changes over a broader than two-year period, then you would have done that in the other cases. The commission would have done that on its own if that's how it viewed the point of this proceeding. It doesn't sit back passively and wait for people to just tell them about these things. You're supposed to know what the test is supposed to do. Well, I think that the way this Court has looked at agency changes in course is whether the agency acknowledges what it's done in the past and articulates a reasonable basis for— Right, but you didn't acknowledge that, in fact, you have had prior cases involving equally, if not more late filings of complaints where the data was available. To be clear, that wasn't raised directly to the commission. That's what I'm asking is why does it have to be raised? Because if, in fact, the commission's theory of what this proceeding is doing and the final agency action being challenged is this moving through time rate, and it's going to be the rate at the time the complaint is filed, not at the time the tariff is filed, then you, by definition, would have had to demand that information. Right? I don't think you—I don't understand why it matters whether they raised it. The question here is what is the point of this proceeding? What final agency action is being challenged? And I thought it was a filing of the tariff with the index, the increased rate from the index. Well, yes. The action being challenged is the index rate increases. And so I think the alternative— Which would occur in 2010. Let's say July 1, 2010. Well, the— And it might happen— The index rate increases were 2012 and 2013.  I was using—I started with it 2008, 2010.  But if you want to go 2012, fine. So let's say July 1, 2012. That's the final agency action that is being challenged here. And yet you're saying we're going to uphold that final agency action based on information that happened after the final agency action. That is data and costs that came in later. Well, look, to be clear, I mean the start of the agency proceeding was 2014, which is when the complaints were filed. Right. The problem here, then, is the commission was confronted with—the alternative would be that it would have to ignore more recent cost data that's available that undermines the showing of different estimates. Because the test is whether the rate was appropriate when it was adopted in 2012. Now, if they had subsequent— The problem is the regulation doesn't say that. Why wouldn't their subsequent cost increases be addressed by the subsequent indices that would be adjusted for that inflation? The problem is I think the commission was trying to implement—was trying to apply a broadly worded regulation that doesn't define whether we're looking at just the time of the rate increase. That's correct. It was trying to do that. And the only explanation it gave was you all filed later within your perfectly lawful limitations period. And that seems to be an entirely arbitrary basis. Or tell me why it's not an entirely arbitrary basis on which to change the nature of the question that the commission is asking. Well, to be clear, I think that the commission in all of these orders has never tried to pin down exactly what the— I mean, other than the broad statement that I gave earlier about what indexing is intended to accomplish, what it's always said is— You don't know what the question is that's being asked? I think what the commission has said in the past consistently is in cases that have involved just the two years of data before rate increase, the commission has considered—has said, well, it's the—we look at the cost data before the rate increase. Now, here we have a different set of circumstances that the commission acknowledged. So it's either in a point where it has to— But it wasn't one you hadn't had before. Yeah. This is something that's never been raised to the commission. Not raised before, but you've had these exact scenarios. Well, I think it happened in two different—in two proceedings. Right. Okay. So, I'm sorry, just to try to pin this down about what's the underlying question that's going on here. Is it—is my initial framing right? Is this really about the question whether—the phrase in the regulation is whether the rate increase substantially exceeds actual cost increases incurred. That's right. And what it seems you're doing is everyone from the beginning of time has assumed that that means incurred at the time of the filing of the rate increase. And you have now changed your interpretation of that regulation to mean incurred at the time of the filing of the complaint. Is that a fair characterization? And that meshes with what Judge Millett is saying, that what you're honing in on is now different. Well, I think that that's correct. But I would add to that it's not just the fact that before it was looking just at when the rate increase was filed. But in almost every instance, the rate increase was filed and the complaint or protest was filed immediately on top of that, such that we don't have data post-dating the rate increase. That circumstance arose a couple of times in a circumstance in which no one ever asked the commission to consider more data. Typically, what the commission, like any other agency, does is it addresses the issues that the parties raised before it. It's not going to—I mean, sometimes agencies obviously can go further than what the parties asked. But for whatever reason, the commission didn't take that approach in the 2012 orders. Here, there was an actual dispute at the time the complaints were filed, which is two years after the rate increases. So then we're in a position where we have to either ignore actual costs incurred or stick to the prior approach and pretend that those costs don't exist for now. And the commission chose— Or give a better explanation for why the commission has changed its position. So I'm not sure what more the commission could have said other than that this is the first time someone's tried to— this is the first time we've had to deal with a dispute about whether we should look at this additional data or not. It is admittedly a new area for the commission. Okay. Just one more. Yeah, go ahead. Which is, putting aside the explanation issue, your new interpretation might seem reasonable on the face of that one regulation. But in the larger context of indexing, these are proceedings that are designed to be adjustments, to identify circumstances when the ceiling doesn't work, right? And the ceiling is firmly defined to focus on, you know, what happens at the time of the index increase relative to what happened in the two years prior. That— So why shouldn't— Well, yeah, it's past cost increases in the industry. If you're talking about July 2012, the ceiling for the index year that begins on July 2012 is assessed by comparing calendar year 2010 to calendar year 2011, right? PPI plus something. That's right. And if that's the focus for the overarching ceiling, why shouldn't that be the focus for these proceedings that are designed to address a fairly narrow question of when the ceiling won't work for some reason? Well, I think that we're in the world where we're looking at a challenge to an index rate that's within the ceiling. And so then it's a question of whether the commission sticks with just looking at the two years of data before the rate increase or looks at other data, more recent data that has available to it. I think it was in a tough position considering that the alternative would have been for the commission not to— It just seems a little odd that the analysis of the exception is starting to outstrip the focus of the rule. I mean, I think part of this, though, is that the whole point of indexing, and I think Your Honors have covered this ground, but the whole point is to make it a separate sort of alternative to the more burdensome cost of service rate making. And so pipelines have the ability to make adjustments without having to go to the commission every time. Now, if a party wants to make a challenge to an index rate, there's a limited means of doing that. It hasn't come up that many instances, and when it has come up as a practical matter, the data that the commission has looked at is the data that's available at the time the protest or complaint has been filed. So in the new circumstance— I just want to be clear, then. Yes. you can have a rate that's adopted in July 1, 2012 that is actually, by any measure, substantially excessive. It's the worst hypothetically you could imagine. Okay. Right? Excessive in terms of the cost. But as it happens, before the complaint is filed, lucky for that pipeline, finances change just enough to inch them under the line two years later. And the commission, you're telling me, is it deciding whether the rate was substantially excessive when adopted or substantially excessive when the complaint was filed? It sounds to me like it must be doing the latter. As a result of the orders on review now, it's what data is available at the time the complaint is filed. And it is deciding, what is it deciding when it says it's not substantially excessive looking at that new data? Is it deciding that it was not substantially excessive on the day it was adopted? Or maybe it was, but it was not substantially excessive on the date the complaint was filed. Which is it deciding? It's comparing the— Imagine what is deciding. What is the holding as to it was not substantially excessive when? It's a comparison of all the costs that are—all the costs available up to the time of the complaint. I understand mechanically how they're coming to the answer, but I'm trying to figure out what question they're answering. They're saying, yes, I'm now looking at this additional cost information, two years more cost information. And when I look at that, I hold it is not substantially excessive as of the time of the complaint or as of the time the rate was adopted. Or you can't tell me. Well, it's as of the time of the complaint in the sense that we're looking— That the index increased rate was filed. Yes, because of the fact that in almost every instance, there's not really much of a difference. So they just aren't entitled to a legal answer to the question of whether it was substantially excessive when it was adopted and for the two years before they filed their complaint. The commission said that what it was doing here was fairly narrow. At the end of the day, the complaining parties always control when they file their complaint. You give them two years. Does it work the other way? Let's imagine someone filed a pretty illegitimate claim of substantial exceedance on the time it was filed. But fortuitously for the shippers, economic circumstances changed. By the time of the complaint, it was substantially excessive. But at the time the rate was filed, it was perfectly legitimate for that pipeline to have increased its rate exactly as it did. They did exactly what would be expected given that index and the circumstances at the time. Will it then still be held to be substantially excessive? It's the exact same. If there's more cost data available at the time the complaint is filed, that is if there's data available after the rate increase, whatever direction that data is going in, that's the data the commission is looking at. Is it then odd that the pipeline, when they file the increase, has no way of knowing whether that's a lawful increase? Well, it is a lawful increase in the sense that if it's under the rate ceiling, they're entitled to take that adjustment. Now, if a party disagrees and thinks it's actually an unjust and unreasonable increase, they have to go through the complaint process. But if a timely complaint is filed two years later, whether or not that rate increase is upheld will depend on facts that were unknowable to the pipeline at the time they sought the increase. Well, I suppose it's unknowable to anyone, but at the same time, this is always a data-driven inquiry. It's what's happening with the pipeline's costs, and is the pipeline over-recovering costs more as a result of the rate increase or not? And so here the commission saw that the data was trending downward based on the shippers' own numbers. So the over-recovery, if you want to call it that, was roughly 13 percent in 2011, down to 10 percent the next year, down to 9 percent the year after. Those numbers haven't been disputed. Just one quick thing on this tax allowance issue. Do you agree with them that hypothetically if there were a remand in this case on this first issue, that that issue would be open to be addressed on remand? Or do we have to resolve it now? I think that I don't want to speak for what the commission may do. I think the problem we raised in our briefs is that the commission hadn't had an opportunity to address it. I suppose if this court were to remand, the commission would have that opportunity. It wouldn't be barred by it for any reason? I'm sorry? It wouldn't be barred from being considered again? Because your arguments sound kind of like it might be barred. Well, I think that we were trying to say in the red brief that they can't make the argument now before court. Here? Yeah, here. But at the same time, that proceeding, at least one of the proceedings they've cited, is still ongoing. So that certainly will have an impact on the answer. Thank you, Your Honors. We'll hear from the intervener. Good morning, Your Honors. May it please the Court, I am Charles Caldwell, appearing on behalf of SFPBLP, the intervener in support of respondents. I'd like to dive right into some of the questions that have been raised. I think there are a number of factors here that are important in dealing with some of the questions that Judge Millett, that you had had, and also Judge Katz's, one of your questions. One is that in the complaint setting, the commission has articulated, over the course of its orders, I mean, this standard of substantial exacerbation was articulated about 11 years ago. The universe of index complaint orders at the commission is quite limited. We're not looking at lots and lots of orders, as you may have noticed. But the commission has articulated an approach to those instances where the percentage comparison test, which is applied both to protests and complaints, that the rates, the index rates involved, pass that test. And so we have a complaint setting. The commission, in more than one order, beyond this order, dealt with that by articulating that when we see unique factual circumstances that warrant looking more deeply, we can in a complaint setting. And one of the reasons we can is because the Interstate Commerce Act affords more time for the commission to deal with complaints than it can with protests. A protest has to be a page 700 snapshot evaluation, whereas in a complaint, the commission can delve further. And where it sees- But it's never done that, right? It has, Your Honor. I would say that in the East Line case, which was cited in the briefs, East Line is one of the SFPP lines, and in the East Line, there was an index protest. It passed that hurdle. A complaint filed, and there were large capital investments that occurred. And the argument was that page 700 was warped by those capital costs, and that the commission granted that complaint, permitted an investigation, said isolate that data, told the parties involved, and told SFPP, you can go beyond page 700, sort out that capital cost, and determine whether or not the index rates for the other lines, not the East Line, still pass the test or not. So I'm sorry. That's in a protest? An index protest? That was a complaint case. I'm sorry. Index complaint? That was a complaint case. There was also one involving the North Line. But in that case, were they using data beyond what was in the 700s, or were they using data also from future years? I will back up to my English teacher and say beyond could mean later in time or it could mean outside of. They used data outside, Your Honor. Well, but was it later in time or not? It was not later in time, Your Honor. Then there are still no cases. That's the question. I do not contest that, Your Honor. My point is that the commission has, before this case, looked at situations where in an index complaint setting, it needed to look beyond the page 700 prior period data that the complainants would have you focus on. Does it bother you if the pipeline says, hey, here's my, it's time for me to decide my rate for 2019. I'm going to start July 1, 2019. I'd like you to look at it, Counselor, and let me know if it's lawful or if it's substantially excessive. And you look at all the data that they have, look at the two prior years, and it is spot on correct for them to adopt. It would be financially irresponsible for them not to adopt the rate increase. But you can't tell them under this test that it's lawful, that it's not substantially excessive. Because it might be substantially excessive by the time a complaint is filed. Is that what you counsel your clients? Well, let's say, Your Honor, that is a matter that if that set of facts were presented to the commission, the commission would have to speak to it. That's just a very scenario. Pardon? That's just very new. This is a new rule that they're telling us they adopt in. What the commission has seen so far is a situation where. I'm not asking what they've seen. I don't know how you advise clients at that point. At that point, I would have to say that there is a risk that, depending on how the commission interprets this elaboration of its standard. You can't. It has to interpret it even handily. It can't be a one-way ratchet, right? You're not going to tell your clients that, are you? Your Honor, I'm a lawyer in the regulatory sphere, so I'm prepared for things. It is a one-way ratchet. At this point, I would say. I'm sorry, Your Honor, let me interrupt. At this point, we don't know. What's been presented to the commission, the commission has incrementally elaborated its wider range of facts. What don't we know? What we don't know, well, I'm adopting Judge Millett's hypothetical, and what I would say is what we don't know is if a set of shippers or a shipper decided to wait and see. Even though I've advised my client, based on the data that we have for the two prior years, it appears that you should be okay. I will say, Your Honor, just to quibble, because that's what we lawyers do, I would not advise them whether it's lawful or not. That would be a finding that only the commission can issue, that a rate is just and reasonable. Indexing, and it's important to recognize this, indexing is not a method to derive just and reasonable rates. It's not an adjudication. It is a rough-and-ready methodology, Congress-mandated, be simplified, because oil pipeline cases up to that point have taken forever, a simplified method to adjust rates. I'm sorry. Since you said you represent people in this industry more generally, is there any other – there's lots of rate-making areas that FERC governs. Are there any other that you're aware of where the commission decides the lawfulness, the justness and reasonableness of a rate based on a time a complaint is filed rather than a time at the time the rate is filed? Well, Your Honor, I can only speak within the oil pipeline arena. And in that arena, if a complaint is filed, there's going to be a value that's going to be based on the data as of the time of the complaint. Nobody knows what's subsequent to it. When a pipeline at the time the complaint is – So the lawfulness of a rate is – Well, a complaint has to be assessed as to whether or not it's going – the commission is going to permit the complaint. I'm talking in a generalized base-rate complaint outside the realm of indexing. The complaint would be filed. The complaint would rely upon – To really challenge that base rate. To challenge the base rate, Your Honor. And they would look at the data available, which would be generally the page 700 data that the pipeline provided. I think that, Your Honor, there are some points that you are raising about this looking forward in time and you're capturing costs, later periods. It's important to go back to the basic principle. What was the commission attempting to do with these wider range of factors? And specifically – You're way over time. I'm sorry, Your Honor. Just finish up. Thank you, Your Honor. In substantial exacerbation, that's an elaboration where the commission's looking at the data available and sees on the face of page 700 a potentially substantial over-recovery of costs by the rates. And in that instance, the commission says, let's look and see – the inquiry is how will the index increase? And back to Judge Katz's point of we'll do 2012. You've looked at 10 and 11. In 12, you make the index adjustment. Let's look and see if that increment of rate change of the index were added, would that substantially exacerbate the existing over-recovery? That's the inquiry. So it inherently looks forward in time. There's no way an index adjustment changes a cost over-recovery in the past. It has to happen in the future. It doesn't do anything, Your Honor, to change the indexing that's been applied. That is untouched. All right. It's only an inquiry as to whether or not that index adjustment was reasonable. All right. Thank you. Sorry, Your Honor. Thank you. Did Mr. Ducey have any comment? Mr. Ducey did not have any comment. Okay. You can take two minutes. Thank you, Your Honor. Just as to the last point with Mr. Caldwell, where he indicated that in order to do the substantial exacerbation test, you need to look forward, that's strictly contrary to what the FERC did. In the original case where it's set up, the substantial exacerbation test, where you had a complaint filed in 2007 versus a 2005 index adjustment, when they measured whether there was some type of a substantial exacerbation, they looked at the over-recovery for 2004 and projected the increased revenue on that and said that would create a yield that would cause a problem. They did not look forward. FERC has never looked forward in any type of an analysis. They've always defined it and kept it with the original purpose of the annual index is to keep it tied to the specific period because it's an annual item. It's an annual increase every year so that you look backwards. So that means that you focus that narrow test on that specific time period and cost. Can I take you back to Judge Millett's question? So suppose we're outside this quirky world of complaints challenging index increases. We're just doing cost of service rate making 101, either setting the initial rate of an oil pipeline or, I don't know, maybe a natural gas pipeline or whatever. Is it normally the case that the reasonableness of the rate is assessed based on facts and costs that happened before the rate was set and were therefore knowable to the pipeline when they set the rate? Or is it done after the fact, the proceeding is litigated two or three years later and the commission will look at everything that's happened in the interim? The closest analogy that I can give you is that when a pipeline files its own rate, like it did here, when they initiate an index increase, they can initiate their own general rate case. So when they make that filing and they put that rate into effect and it's challenged, it's subject to refund as of that day, not a future day. Because it could be challenged in the context of under the commission's regulations, you need to file protests. But it can be found to be unlawful based on things that happen post-filing, on cost changes or over-recovery changes post-filing. Right, because it would be filed and there would be some type of information that backs that rate up, like a base period going behind it, and that you would be looking at that and saying that's unreasonable. Now, if they propose that they want to do a future rate that's going to go out for a long period of time, they would have a test period and say, we anticipate all of these future changes in cost, so that would be evaluated. But for the most part is that if they file a rate and it's challenged, it's subject to refund as of that day, not a future day. Thank you. Thank you.
judges: Tatel, Millett, Katsas